DUANE MORRIS LLP
John Dellaportas, Esq.
Justin J. D'Elia, Esq.
Spensyr A. Krebsbach, Esq.
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Interpleader Plaintiff*
*Reserve International Liquidity Fund, Ltd.*



IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RESERVE INTERNATIONAL LIQUIDITY :
FUND, LTD., :
: No. (    ) (    )
Interpleader Plaintiff, :
:
v. :
:
CAXTON INTERNATIONAL LIMITED, : **COMPLAINT FOR INTERPLEADER**
VERISIGN SARL, et al. :
:
Defendants. :

---

Interpleader plaintiff Reserve International Liquidity Fund, Ltd. (the "Fund"), through its attorneys, Duane Morris LLP, by way of its Complaint for Interpleader alleges as follows:

## PARTIES

1. The International Fund is an offshore money-market type fund, organized as a limited liability company under the British Virgin Islands (the "BVI") Business Companies Act of 2004 and registered and regulated as a "Public Fund" within the meaning of the British Virgin Islands Mutual Funds Act 1996.

2. Defendant Caxton International Limited ("Caxton"), an investment fund, is a British Virgin Islands corporation, with its principal place of business located at 12 Church Street, Hamilton HM11, Bermuda. As discussed below, Caxton has a pending action currently

before this Court (albeit subject to a motion to remand) whereby it seeks, *inter alia,* a *pro rata* distribution of all remaining Fund assets.

3. Defendant VeriSign SARL ("VeriSign") is a Swiss corporation that provides infrastructure services to the world's voice, video and data networks with its principal place of business located at Route des Arsenaux 41, CH-1705 Fribourg, Switzerland. As discussed below, VeriSign has a pending action currently before this Court (albeit subject to a motion to remand) whereby it seeks a first-in-first-out (FIFO) distribution of all remaining Fund assets, which would be mutually inconsistent with a *pro rata* distribution.

4. In addition to Caxton and VeriSign, the Fund has approximately three thousand other investors, located in multiple states of the United States and in multiple foreign countries, some or all of whom may assert a claim to Fund assets and are therefore named as defendants in this interpleader complaint. Many of these other investors have already threatened to bring suit, some demanding a *pro rata* distribution and others demanding a FIFO distribution. A complete list of all defendants/investors is annexed hereto as Exhibit A.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1335. The Fund has in its custody assets of a value greater than $500, and two or more of defendants, of diverse citizenship, are claiming or may claim to be entitled to such assets. The Fund is prepared to deposit the aforementioned assets (less all incurred but unpaid management and distributor fees and expenses, legal and professional fees, and other administrative costs) into an escrow account controlled by a Court-appointed Independent Monitor, or in the alternative into the registry of the Court.

6. Pursuant to 28 U.S.C. § 1391(a)(2), venue in this district is proper because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

### A. The Events Giving Rise to Competing Claims for Fund Assets

7. The Fund is a business company incorporated under the laws of the BVI, and organized under the BVI Business Companies act of 2004. The Fund is registered as a "Public Fund" within the meaning of the BVI Mutual Funds Act of 1996, as amended.

8. The Fund holds fixed income securities of various issuers, including a limited amount of commercial paper and floating rate notes issued by Lehman Brothers Holdings, Inc. ("Lehman Holdings").

9. Other than the securities issued by Lehman Holdings, the Fund's assets consist of securities currently rated not lower than A1, F1, or P1 by at least two nationally recognized statistical rating organizations and have a fixed value on maturity.

10. Following the bankruptcy of Lehman Holdings on September, 15, 2008, and the significant disruption in the financial markets that followed, the value of the debt securities issued by Lehman Holdings was valued at zero as September 16, 2008. As a result, the net asset value (the "NAV") of the Fund fell below $1.00 per share.

11. The Board of Directors of the Fund (the "Board") voted on September 22, 2008 to suspend calculation of the NAV of Fund shares and to postpone the date of payment of redemption requests as of September 22, 2008. The Board took those actions in order to allow for an orderly realization of the Fund's assets and to ensure that all investors are treated fairly in the process.

12. Since October 2, 2008, the holdings of the Fund as of the daily close of business have been posted on www.TheR.com by 10 a.m. (eastern time) the next business day. The holdings report of October 22, 2009 includes the maturity schedule of Fund Assets, the average weighted maturity, and the nature of the holdings (annexed here to as Exhibit B).

13. On November 10, 2008, the Fund agreed, as part of a court-ordered stipulation (the "Order"), to the appointment of a Temporary Supervisor. According to the terms of the Order, the Temporary Supervisor's duties are to "monitor and supervise (but not interfere with) the operation and management of the Fund" by, *inter alia*, providing weekly reports to the Court and assisting with the formulation of a plan for partial distributions of the Fund's cash. The Temporary Supervisor is not authorized to "replace or supplant in any way the Fund Managers in the management of the Fund, determine a plan of partial or final distribution for the Fund, or direct the Fund Managers to take any particular action." (Emphasis added.) Fund shareholders are entitled to sign up to receive the Temporary Supervisor's reports.

14. BVI law permits a partial payment of a redemption amount to fund an existing redemption request. Consequently, the Board approved an amendment of the Fund's Articles of Association to permit the Fund to make partial payment in redemption of the Fund's shares in order to make *pro rata* partial payments to investors who made redemption requests.

15. A shareholder's *pro rata* share equals the proportion that shares redeemed by the shareholder bears to the total number of shares submitted for redemption multiplied by the amount available for distribution.

16. On January 16, 2009, the Board strongly encouraged all investors to submit their request for a redemption of all of their shares by the deadline of 5:00 p.m. (eastern time) on January 26, 2009. The Board issued this Notice to maximize the number of shareholders eligible to participate in interim distributions.

17. On January 30, 2009 the Fund announced that some portfolio securities had been sold or matured and the Fund had $1.875 billion in cash to distribute to Fund investors. This represented approximately 65% of the total assets of the Fund.

18. The distribution was made on a *pro rata* basis to all shareholders who placed redemption requests before January 26, 2009 at 5:00 p.m. (eastern time) and shareholders whose account balances were below the asset class account minimums for automatic redemptions as set forth in the Fund's January 18, 2008 Offering Memorandum.

19. On June 19, 2009 the Fund began its second distribution to shareholders of the Fund. The distribution totaled $400 million. This represented approximately 44% of the remaining total assets of the Fund ($907 million).

20. At the conclusion of this distribution, approximately $2.275 billion or 80% of the Fund's assets as of the close of business on September 15, 2008 were returned to shareholders.

21. Approximately $507 million remains in the Fund, which includes the Lehman Holdings securities, which are valued at zero.

### B. The Competing Claims for Fund Assets

22. Litigation has been commenced against the Fund, alleging or challenging the entitlement of investors to $1.00 per share and making certain other claims. There are two cases filed and pending in the United States District Court for the Southern District of New York arising out of the facts and circumstances alleged in this Interpleader complaint: *Caxton International Limited et al v. Reserve International Liquidity Fund, Ltd.*, Case 1:09-cv-00782-PGG, and *VeriSign SARL et al v. Reserve International Liquidity Fund Ltd.*, Case 1:09-cv-03786-PGG.

23. As evidenced in the litigation involving a sister fund, the Reserve Primary Fund, investors take conflicting positions with respect to the method for distribution of a fund's liquidated assets, *Securities and Exchange Commission v. Reserve Management Company, Inc., et al.*, Case 1:09-cv-04346-PGG.

-6-

24. One method for the final liquidation of Fund assets is a *pro rata* distribution. A *pro rata* share equals the proportion that shares redeemed by the shareholder bears to the total number of shares outstanding multiplied by the amount available for distribution.

25. If all remaining Fund Assets were distributed on a *pro rata* basis to all Unpaid Shareholders (less all incurred but unpaid management and distributor fees and expenses, legal and professional fees, and other administrative costs) and the Fund's Lehman securities sold at the current estimated market price of 17% of face value, investors would recover up to approximately $0.95 cents per share.

26. Other defendants support a FIFO distribution method. Under the FIFO theory there exists a group of redeeming investors who on September 15, 2008 and September 16, 2008, submitted requests to redeem their shares. Arguably, the redemption requests were submitted at a time when the NAV calculated for each of the redemption orders was $1.00 based on a good faith determination made by the Board. Therefore, the outcome of a FIFO distribution would be that those investors are entitled to receive their full $1.00 per share redemption value as part of any plan of liquidation approved by the Court, and that all other investors are left to split whatever amount (if any) that remains.

27. By reason of these conflicting claims, the Fund cannot liquidate the Fund and make the final distribution via *pro rata* distribution, without exposing itself to the risk of being sued by defendants requesting FIFO distribution, or vice versa.

28. Therefore, the Fund seeks to deposit its liquidated assets (less all incurred but unpaid management and distributor fees and expenses, legal and professional fees, and other administrative costs) into an escrow account held by a Court-appointed Independent Monitor, or in the alternative into an escrow account held by the Court until such time as the Court

determines the proper method of distribution (*pro rata* or FIFO) of the Fund's liquidated assets as between defendants.

29. The Fund will seek to have its current investment manager, Reserve Management Company, Inc. ("RMCI"), continue to perform services under its Comprehensive Management Fee Agreement, in order to ensure the final distribution of Fund assets occurs on a timely basis, in an efficient manner, and in the best interest of Fund investors. Following the commencement of this action, the Fund also intends to move for entry of a Final Distribution Plan.

30. Under a directive (the "Directive") issued on October 17, 2008, by the Financial Services Commission ("FSC"), the Fund's regulator in the British Virgin Islands ("BVI"), any distribution to the Fund's shareholders is subject to the approval and supervision of the FSC. The Fund has consulted with Mr. Brodrick Penn, the FSC's Director of Investment Business, and is optimistic that the FSC will support a Court-approved final distribution of the Fund's assets through the mechanism of this interpleader action.

## RELIEF SOUGHT

31. The Fund has a real and reasonable fear of liability or vexatious, conflicting claims directed against the Fund's assets and are not in the position to determine which party's claim to the assets in the accounts is meritorious.

32. The Fund is ready, willing and able to turn over the Fund's assets (less all incurred but unpaid management and distributor fees and expenses, legal and professional fees, and other administrative costs) to the persons and entities entitled to them, but the Fund is unable, without hazard to itself and at risk of being subject to multiple claims, to make the determination as to how the Fund's assets should be distributed.

33. The Fund is ready, willing and able, and indeed requests the right, to deposit the Fund's assets (less all incurred but unpaid management and distributor fees and expenses, legal

and professional fees, and other administrative costs) with either a Court-appointed Independent Monitor (with RMCI continuing to manage such Fund assets under Monitor supervision until final distribution), or in the alternative into an escrow account held by the Court.

34. The Fund has no means other than this action of protecting itself against further duplicative litigation as to the Fund's assets on the part of defendants and other Fund investors who have threatened to, and may ultimately, bring suit.

**WHEREFORE**, The Fund demands judgment as follows:

1. That the Fund be allowed to deposit all Fund assets (less all incurred but unpaid management and distributor fees and expenses, legal and professional fees, and other administrative costs) into an escrow account controlled by a Court-appointed Independent Monitor(with RMCI continuing to manage such Fund assets under Monitor supervision until final distribution), or in the alternative into an escrow account held by the Court;

2. That upon Court approval of a final plan of distribution to be proffered by the Fund, that the Fund be dismissed with prejudice from this action, and permanently enjoining and restraining defendants, as well as any other persons or entities that may assert any claims against the Fund or its indemnitees, from commencing or prosecuting any other action or proceeding to recover any amount of Fund's assets, whether directly or indirectly through a claim against an indemnitee of the Fund;

3. Discharging the Fund and its indemnitees from all liabilities to defendants arising out of the matters set forth herein upon payment of the Fund's assets (less all incurred but unpaid management and distributor fees and expenses, legal and professional fees, and other administrative costs) into an escrow account held by a Court-appointed Independent

Monitor(with RMCI continuing to manage such Fund assets under Monitor supervision until final distribution), or in the alternative into an escrow account held by the Court;

4. Authorizing payment from Fund assets of all amounts owed to the Fund's investment manager, distributor, and counsel;

5. That the defendants be required to interplead and settle between themselves their rights to the final distribution funds;

6. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 26, 2009

          Respectfully submitted,

          DUANE MORRIS LLP

          By: _____
             John Dellaportas, Esq.
             Justin J. D'Elia, Esq.
             Spensyr A. Krebsbach, Esq.
          1540 Broadway
          New York, New York 10036
          Tel: (212) 692-1000
          *Attorneys for Interpleader Plaintiff*
          *Reserve International Liquidity Fund, Ltd.*

DM1\1937112.4

Case 1:09-cv-09021-PGG   Document 1   Filed 10/27/2009   Page 10 of 14

# EXHIBIT A

# FILED UNDER SEAL

Case 1:09-cv-09021-PGG    Document 1    Filed 10/27/2009    Page 12 of 14

**R**
The Reserve
A Tradition of Financial Innovation℠

| **Schedule of Investments** | (October 22, 2009 Unaudited) | | **Fund Name: INT`L LIQUIDITY USD** | |
|---|---|---|---|---|
| DESCRIPTION | MATURITY DATE* | COUPON RATE (%) | UNITS (US$) | PCT OF PORTFOLIO |
| **Commercial Paper - Discount** | | | | |
| LEHMAN BRTHRS HLDG INC | 10/29/2008 | 3.7100 | 25,000,000 | 3.95% |
| LEHMAN BRTHRS HLDG INC | 10/10/2008 | 2.9900 | 50,000,000 | 7.90% |
| **Total Commercial Paper - Discount** | | | 75,000,000 | 11.86% |
| **Federal Home Loan Bank** | | | | |
| FEDERAL HOME LN BK CONS DSC NT | 10/23/2009 | 0.0300 | 464,911,000 | 73.50% |
| **Total Federal Home Loan Bank** | | | 464,911,000 | 73.50% |
| **Floating Rate Note** | | | | |
| LEHMAN BROS HLOGS INC | 03/20/2009 | 3.1100 | 50,000,000 | 7.90% |
| **Total Floating Rate Note** | | | 50,000,000 | 7.90% |
| **Investment Total** | | | 589,911,000 | 93.26% |
| **Cash Held at Custodian Bank**+ | | | 42,602,861 | 6.74% |
| **Portfolio Total** | | | 632,513,861 | 100.00% |
| **Average Weighted Maturity** | | | | 1 Days |

+To determine the cash that is available for eventual distribution, add time deposits and securities maturing in one day to cash held at custodian bank. A negative cash number represents an overdrawn balance.

Cash does not include receivables for securities sold until the trade settles.

*The maturities of the securities shown are the earliest date that the Fund would be able to realize the value of the investment, which could be the instrument's stated maturity, the date on which the Fund has the right to put the securities to the issuer, the date which the issue has been called or the date on which the security is scheduled to be pre-refunded.

Portfolio composition is subject to change at any time. If securities are sold with a delayed settlement date, the above portfolio listing will not reflect those securities. However, the securities are still assets of the fund and will continue to earn interest until the trade settles.

On September 16, 2008, the Lehman Brothers securities in the fund were valued at zero, where they remain. These securities are included in the line item "Portfolio Total" at their face value.

This data is unaudited and provided for informational purposes only and is not intended for trading purposes.

*An investment in a money market fund is not insured or guaranteed by the Federal Deposit Insurance Corporation or any other government agency. Although money market funds seek to preserve the value of your investment at $1.00 per share, it is possible to lose money by investing in a money market fund. You should carefully consider the investment objectives, risks and charges and expenses of the Fund before investing. The Fund's Prospectus contains this and other information about the Fund. The Fund's Prospectus may be obtained by writing to The Reserve, 1250 Broadway, New York, New York 10001-3701 or by calling 1-800-637-1700 and pressing "0." You should read the Prospectus carefully before you invest.*

*This information is for the use of U.S. residents only. The investment products and services referred to should not be considered a solicitation to buy products or an offering of any investment products to investors residing outside*


the United States or to any person in any jurisdiction in which such offers, solicitations, purchases or sales would be unlawful under the securities or other applicable laws of such jurisdiction.

Resrv Partners, Inc., Distributor. Member FINRA. 10/09