UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RESERVE INTERNATIONAL LIQUIDITY FUND, :
LTD., :
 :
                Interpleader Plaintiff, :
 : No. 09 Civ. 9021 (PGG)
            v. :
 :
CAXTON INTERNATIONAL LIMITED, VERISIGN :
SARL, et al., :
 :
                Defendants. :
 :
------------------------------------------------------------------x

# MEMORANDUM OF LAW OF NON-PARTY SOCIÉTÉ GÉNÉRALE IN OPPOSITION TO INTERPLEADER PLAINTIFF'S PETITION FOR A WRIT OF INJUNCTION

Brian H. Polovoy
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for Non-Party Société Générale*

Dated:  June 1, 2010

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS .....................................................................................................3

PROCEDURAL HISTORY ....................................................................................................5

      A.      The Fund and RMCI Sue Société Générale In New York Supreme Court After RMCI Had First Filed An Identical Action Against Société Générale In The Cayman Islands ...................................................................................................5

      B.      The Fund And RMCI Ask The New York Supreme Court For A Preliminary Mandatory Injunction Directing Société Générale To Immediately Return The Contested Deposit.....................................................................................................5

      C.      With Its Actions Against Société Générale Pending In New York State Court And The Cayman Court, The Fund Asks This Court For An Extraordinary Writ Directing Non-Party Société Générale To Deliver The Deposit To The Court Registry – Even Though Société Générale Sought Interpleader Relief In The Cayman Islands, And That Court Has Directed Société Générale To Return The Deposit To The Liquidators Of The Fund ............................................7

ARGUMENT..........................................................................................................................8

      THE FUND'S PETITION FOR A WRIT OF INJUNCTION UNDER THE ALL WRITS ACT SHOULD BE DENIED ................................................................8

CONCLUSION .....................................................................................................................14

# **TABLE OF AUTHORITIES**

## **CASES**

**Page**

*Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 30 F.3d 367 (2d Cir. 1994) ................ 8-9, 12

*Braka v. Bancomer, S.N.C.*, 762 F.2d 222 (2d Cir. 1985) ................................................................ 10-11

*De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212 (1945) ................................................. 8

*Lambert v. Buss*, 498 F.3d 446 (7th Cir. 2007) ........................................................................................ 8

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985) ................................................. 8, 10

*Schneider v. Miller*, 117 N.Y.S. 287 (App. Div. 1909) ........................................................................ 10

*Sithe Energies, Inc. v. 335 Madison Ave., LLC*, 846 N.Y.S.2d 155 (App. Div. 2007) ................ 10

*Sprint Spectrum L.P. v. Mills*, 283 F.3d 404 (2d Cir. 2002) ............................................................... 12

*Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002) ............................................................ 8, 10

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) ................................................................ 8, 9, 12

*United States v. Prof. Air Traffic Controllers Org. (PATCO)*, 438 F.2d 79 (2d Cir. 1971) ...... 8, 11

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977) ........................................................................ 8

*Xerox Corp. v. Neises*, 295 N.Y.S.2d 717 (App. Div. 1968) ............................................................. 10

## **STATUTE**

28 U.S.C. § 1651(a) ("All Writs Act") .......................................................................................... *passim*

Pursuant to the Court's Order to Show Cause dated May 26, 2010 [Docket no. 81], Non-Party Société Générale ("SocGen") respectfully submits this memorandum of law in opposition to the petition for a writ of injunction under the All Writs Act filed by interpleader plaintiff Reserve International Liquidity Fund, Ltd. (the "Fund") [Docket nos. 83-85].

## **PRELIMINARY STATEMENT**

SocGen has no financial interest in this dispute. It is a stakeholder; it is not a party to this action. SocGen's Grand Cayman branch received a $10 million overnight deposit (the "Deposit") from Reserve International Liquidity Fund, Ltd. (the "Fund"). SocGen agrees that the Deposit must be repaid. Different parties, however, have asserted the right to the repayment.

With the filing of this new Petition, SocGen is now the target of three separate actions brought by the Fund and/or its investment manager to recover the repayment, each proceeding simultaneously in different courts. In the two earlier-filed actions, SocGen is subject to conflicting court orders on the repayment of the Deposit. Indeed, the Deposit is already the subject of an interpleader action in the Cayman Islands, and the court there has issued an explicit order that the Liquidators are entitled to the repayment of the Deposit.

The first action, filed by RMCI in the Grand Court of the Cayman Islands, Financial Services Division (the "Cayman Court"), sought an order that SocGen pay the Deposit to RMCI. Two weeks later, RMCI, later purportedly joined by the Fund, filed a second, substantively identical action in New York Supreme Court. In that action, the Fund seeks an extraordinary preliminary mandatory injunction "affirmatively requiring" SocGen, pending determination of the Fund's lawsuit, to pay over the Deposit to State Street Bank and Trust Company to be interpleaded in this Court. With a hearing on its motion for a preliminary mandatory injunction scheduled to be heard later this month, the Fund now asks this Court to

order SocGen – on two business days' notice – to show cause why it should not have to pay the Deposit into the Court's Registry, *i.e.*, the same relief the Fund and RMCI seek in the other two courts. The Fund seeks this relief, however, notwithstanding that (i) the Deposit is already the subject of an interpleader action in the Cayman Court, (ii) the Cayman Court has issued an order directing the payment of the Deposit to the Liquidators, and (iii) the Fund is seeking the same relief in the New York Supreme Court.

       The Fund's petition rests on several factual and legal misconceptions and should be denied. Under settled law, the All Writs Act is not an offensive weapon against non-parties, and the Second Circuit has made plain that there is a "decided tendency" against issuing a writ against innocent third parties. Here, even assuming this Court has subject matter jurisdiction, the Cayman Court has ordered that the Deposit be turned over to the Liquidators of the Fund. Thus, the Fund's claim that SocGen "will not be damaged" by an order directing payment of the Deposit to the Court is cold comfort. It ignores the fact that SocGen is already under a court order to pay the Deposit to the Liquidators. Moreover, the Deposit is not a U.S. debt. It is not chattel; it is a debt payable to the Fund at SocGen's Grand Cayman branch pursuant to a contract governed by the laws of the Cayman Islands. There is no "New York Deposit."

       At the end of the day, there is only one Deposit. RMCI, the Fund, and the Liquidators claim control of the Deposit, which is payable solely in the Cayman Islands. While SocGen appreciates that it may be more desirable to have the distribution of the Fund's assets take place in one forum under this Court's guidance, the relief that the Fund seeks here under the All Writs Act is unprecedented and would, we submit, be highly inappropriate while an order is pending that instructs SocGen to repay the Deposit to the Liquidators. The Fund's petition should be denied.

2

## STATEMENT OF FACTS

A detailed discussion of the facts relating to the Deposit is set forth in the Second Affidavit of Governor Tipton, sworn to April 19, 2010 ("Tipton Aff."), which is attached as Exhibit A to the Declaration of Brian H. Polovoy dated June 1, 2010 ("Polovoy Decl."). We address here one point: The Deposit was (and is) a debt payable to the Fund at SocGen's Grand Cayman branch; the Deposit was not (and is not) chattel located in New York, regardless of any intra-bank transfers at SocGen.

The terms of the Deposit were memorialized by two confirmations dated February 11, 2010 exchanged between SocGen and the Fund's broker, Tullet Prebon Americas Corp.: the "TP Confirmation," sent from Tullett Prebon to SocGen (Ex. 1 to Aff. of Thomas Fulciniti, sworn to April 23, 2010 (Polovoy Decl. Ex. B)), and the "SocGen Confirmation," sent from SocGen's Grand Cayman branch to the Fund. (Ex. 1 to Aff. of Orin Rayside, sworn to April 23, 2010 (Polovoy Decl. Ex. C ).)

The TP Confirmation describes a trade on February 11, 2010 where the buyer is "SOC GEN-CAYMAN" and the seller is "RESERVE A/C OFFSHORE MONEY." The trade was a one-day deposit involving US $10 million with an interest rate of .08% and a maturity date of February 12, 2010. (Polovoy Decl. Ex. B.) The TP Confirmation expressly states that all aspects of the transaction were determined and agreed upon by the Buyer, SocGen's Grand Cayman Branch, and the Seller, the Fund.

The SocGen Confirmation was sent from "Société Générale – Grand Cayman Branch" to "Reserve International Liquidity F[u]nd, Harbour House, Waterfront Drive, Road Town, Tortola [BVI]." The SocGen Confirmation similarly references a one-day deposit in the amount of US $10 million with an interest rate of .08% and a maturity date of February 12, 2010. The SocGen Confirmation states that the beneficiary was "Reserve Intl Liquidity Fund Ltd Fund

3

THFJ." The SocGen Confirmation further states explicitly that the Deposit is "payable solely at" the Grand Cayman branch of SocGen, and subject to the laws of the Cayman Islands:

> ACCOUNTS ARE ACCEPTED AT THE GRAND CAYMAN BRANCH OF SOCIETE GENERALE AND AS SUCH ARE PAYABLE SOLELY AT SUCH BRANCH AND ARE SUBJECT TO THE LAWS AND REGULATIONS OF THE CAYMAN ISLANDS, INCLUDING ANY RESTRICTIONS ON WITHDRAWALS THAT MAY BE IMPOSED BY SUCH COUNTRY.  SUCH ACCOUNTS ARE NOT THE OBLIGATIONS OF THE NEW-YORK BRANCH OF SOCIETE GENERALE.

(SocGen Confirmation (Polovoy Decl. Ex. C) (emphasis in original).)

On February 11, 2010, Governor Tipton, the Deputy General Counsel for the Americas Region of SocGen received a letter from PricewaterhouseCoopers to SocGen Grand Cayman requesting that SocGen freeze the Deposit. (Tipton Aff. ¶ 9, Ex. 5.) The author of the letter stated that he and another member of PricewaterhouseCoopers had been appointed as Joint Official Liquidators of the Fund by an Order of the High Court of Justice for the British Virgin Islands (the "BVI Court"). The letter attached the BVI Court's Order dated January 18, 2010 (the "BVI Order"), which expressly authorized the Joint Official Liquidators to take "custody and control of all the assets of the [Fund] wherever situated." (*Id.*)

SocGen took steps to implement the "freeze." As set forth in detail in Mr. Tipton's affidavit, in doing so, SocGen transferred funds from an account on the books of its Grand Cayman Branch to a "suspense account" held on the books of SocGen's New York branch. (Tipton Aff. ¶¶ 13-14.) The legal obligation owing to the Fund was not transferred from the Grand Cayman branch to the New York branch. The debt owed to the Fund was (and is) payable only by SocGen's Grand Cayman branch and remains subject to the laws of the Cayman Islands.

# PROCEDURAL HISTORY

A. **The Fund and RMCI Sue Société Générale In New York Supreme Court After RMCI Had First Filed An Identical Action Against Société Générale In The Cayman Islands**

RMCI first filed suit against SocGen in the Cayman Court (the "Cayman Action"). (Polovoy Decl. Ex. D.) The Cayman Action alleges that RMCI has full and complete authority to control the investments of the Fund and further asserts that SocGen wrongfully refused to return the Deposit to State Street on February 12, 2010. (*Id.* at 2.) RMCI's Cayman Action seeks damages from SocGen of $10 million, plus costs, past due interest and accruing daily interest. (*Id.*) On April 1, 2010, three days after RMCI filed its Cayman Action, the Cayman Court issued a Declaration in a related proceeding stating that the Liquidators were "the only persons authorized to act for and on behalf of [the Fund] for all purposes and as against all persons in the Cayman Islands." (Polovoy Decl. Ex. E.)

Apparently unsatisfied with the ruling of the Cayman Court – but with its Cayman Action still pending – RMCI filed suit against two subsidiaries of SocGen in the Supreme Court of the State of New York (the "New York State Action"). (Polovoy Decl. Ex. F.) RMCI's complaint, filed April 12, 2010, made identical allegations and sought the same relief as the Cayman Action – the return of the Deposit, plus damages.

B. **The Fund And RMCI Ask The New York Supreme Court For A Preliminary Mandatory Injunction Directing Société Générale To Immediately Return The Contested Deposit**

In the New York State Action, RMCI moved *ex parte* for a temporary restraining order pending a hearing on its motion for a preliminary *mandatory* injunction directing SocGen to pay over the Deposit to State Street. (Polovoy Decl. Ex. G.) The relief sought in the New York State Action is, of course, the very same relief that the Fund now seeks from this Court.

SocGen sought interpleader relief from the Cayman Court. On April 13, 2010, the Cayman Court denied RMCI's claim on the merits, and the Cayman Court ordered SocGen to pay the Deposit to the Liquidators. (Petition Ex. B ¶ 3.) The Cayman Court also enjoined RMCI from proceeding with the New York State Action (whether in its own name or in the name of the Fund). (*Id.* ¶ 1; Polovoy Ex. H.) In its Reasons for Judgment, the Cayman Court criticized the New York State Action as "another duplicative proceeding in a foreign court" that was "vexatious and oppressive," observing that "[SocGen] ha[s] already been sued by [RMCI] in this Court." (Polovoy Decl. Ex. I ¶ 9.)

On April 16, 2010, after SocGen disclosed that there were certain inadvertent factual errors in its earlier submission to the Cayman Court (which had been repeated in the New York State Action), the New York court issued a temporary restraining order prohibiting SocGen from complying with the Cayman Court's April 13 directive. (Tipton Aff. Ex. 12.) RMCI subsequently amended its complaint in the New York State Action to include the Fund as a plaintiff. (Polovoy Decl. Ex. J.) At the April 27 hearing on the Fund's preliminary injunction motion, the New York Supreme Court extended the restraining order and adjourned the hearing on the injunction to May 18, 2010, in part because of the status of proceedings in the Cayman Court. (Polovoy Decl. Ex. K at 34-5.)

The Cayman Court orders are currently on appeal. On April 27, 2010, RMCI appealed the decision in the Cayman Action and the following day moved the Cayman Court of Appeal for a stay of the order instructing SocGen to repay the Deposit to the Liquidators. (Polovoy Decl. Ex. L at 2.) RMCI and the Fund then asked the New York Supreme Court to adjourn the May 18 preliminary injunction hearing and extend the restraining order to allow time for a hearing on their application for a stay pending appeal of the Cayman Court's decision. (*Id.*

at 3 (The New York Supreme Court agreed and set the hearing for May 27, 2010).) In light of the subsequent events in the New York State Action and this Court, SocGen also sought leave to appeal the Cayman order and a stay pending the appeal. RMCI's application for a stay pending appeal was adjourned by the Cayman Court of Appeal pending the disposition by the lower court of the Liquidators' motion for clarification of the April 13 order. (Polovoy Decl. Ex. M.)

On May 28, 2010, the Cayman Court stated that it was clarifying its April 13 order to make clear that that order related to the Deposit, regardless of the fact that the account number on its earlier order referred to an account on the books of SocGen's New York branch. (Polovoy Decl. ¶ 16.)

   C. **With Its Actions Against Société Générale Pending In New York State Court And The Cayman Court, The Fund Asks This Court For An Extraordinary Writ Directing Non-Party Société Générale To Deliver The Deposit To The Court Registry – Even Though Société Générale Sought Interpleader Relief In The Cayman Islands, And That Court Has Directed Société Générale To Return The Deposit To The Liquidators Of The Fund**

Despite the pending appeal in the Cayman Action and its pending motion for a preliminary mandatory injunction in the New York State Action, the Fund filed a petition with this Court on May 26, 2010, seeking virtually identical relief to that already demanded in both the Cayman Action and the New York State Action. [Docket nos. 83-85.] This Court issued an *ex parte* order to show cause on May 26, 2010. [Docket no. 81.]

Following the issuance of the order to show cause, the Fund and RMCI again asked the New York Supreme Court to continue the temporary restraining order against SocGen and adjourn the hearing on their motion for a preliminary mandatory injunction. (Polovoy Decl. Ex. N.) That hearing is now scheduled for June 11, 2010, and the TRO remains in place until that time. (Polovoy Decl. ¶ 17.)

## ARGUMENT

### THE FUND'S PETITION FOR A WRIT OF INJUNCTION UNDER THE ALL WRITS ACT SHOULD BE DENIED

The All Writs Act ("Writs Act") authorizes a federal court to issue "necessary or appropriate" orders to protect its jurisdiction and give effect to its orders. 28 U.S.C. § 1651(a); *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985). Though use of the Writs Act is entrusted to a court's sound discretion, *see United States v. N.Y. Telephone Co.*, 434 U.S. 159, 173 (1977), a federal court's equitable powers must be exercised with caution. "Although the All Writs Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr.*, 474 U.S. at 43. Furthermore, the Writs Act "does not confer jurisdiction on the federal courts." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002); *Lambert v. Buss*, 498 F.3d 446, 454 (7th Cir. 2007) ("[T]he All Writs Act is a provision which effectuates the court's jurisdiction, not a separate grant of jurisdiction.").

For example, the Writs Act cannot be used to reach "'a matter lying wholly outside the issues in the suit.'" *United States v. Prof. Air Traffic Controllers Org. (PATCO)*, 438 F.2d 79, 81-82 (2d Cir. 1971) (quoting *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945)). Similarly, the Act should not be used to frustrate parallel *in personam* actions, which do not "interfere[] with the jurisdiction of either court." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) (construing identical language in the Anti-Injunction Act).

Critically, although there is no absolute prohibition against issuing a writ directed to a non-party to a litigation, there is a "decided tendency to restrain the district court's exercise of its powers under the All Writs Act" against innocent third parties. *Ass'n for Retarded Citizens*

*of Conn., Inc. v. Thorne*, 30 F.3d 367, 372-73 (2d Cir. 1994) (discussing third-party compliance with consent decrees). Moreover, the burden imposed by the writ on the third party must not be unreasonable. *N.Y. Tel. Co.*, 434 U.S. at 172.

The Fund asks this Court to impose upon SocGen, a non-party to this action, a substantial and wholly unreasonable burden by ordering SocGen to pay the Deposit into the Court's Registry, while SocGen is already subject to two conflicting court orders (Petition Ex. B; Polovoy Decl. ¶¶ 16-17), and the Fund is currently seeking identical relief from the New York State Court (Polovoy Decl. Exs. F-G).

The Fund's memorandum does not cite to any decision of any court in which a writ was issued under the Writs Act to compel a non-party to turn over disputed funds into an interpleader action. Our research has not revealed any decision in which a writ compelled a non-party to do anything even remotely similar. This case is hardly the same as *N.Y. Telephone Co.*, 434 U.S. 159, on which the Fund relies, in which the Supreme Court affirmed the use of the Writs Act to compel a telephone company to allow installation of a pen register. Indeed, the Court there noted the assistance of the non-party telephone company was necessary in order to implement surveillance authorized by the District Court; that the District Court's order was not "in any way burdensome" on the non-party, which would be "fully reimbursed"; and that the telephone company's refusal to "supply the meager assistance" required by the FBI "threatened obstruction of an investigation" into a criminal enterprise. *Id.* at 174.[1]

Indeed, the relief that the Fund seeks is identical to that which it seeks in the New York State Action in which SocGen is a party: a preliminary mandatory injunction, which is an extraordinary remedy that is rarely granted and is reserved for circumstances that are

---

[1] The Fund's memorandum cites to six other court decisions but does not discuss the facts of any of those decisions. None is remotely analogous.

"imperative, urgent, or [of] grave necessity." *Sithe Energies, Inc. v. 335 Madison Ave., LLC*, 846 N.Y.S.2d 155, 156 (App. Div. 2007) (quoting *Xerox Corp. v. Neises*, 295 N.Y.S.2d 717, 719 (App. Div. 1968)); *Schneider v. Miller*, 117 N.Y.S. 287, 288 (App. Div. 1909). There is no precedent for the Fund to bypass the burden it faces under the CPLR in seeking a preliminary mandatory injunction in the state court by asking this Court "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient." *Pa. Bureau of Corr.*, 474 U.S. at 43. This is especially the case where the proposed writ would compel the non-party to act in violation of an order of a sister court.

The Fund's request impermissibly seeks to expand this Court's jurisdiction. Here, the Fund asks this Court to issue a writ of injunction that would resolve in its favor (i) its breach of contract action in the New York State Court, and (ii) its appeal of the decision of the Cayman Court directing that SocGen return the Deposit to the Liquidators. An action for the alleged breach of the terms of the Deposit is not, however, within this Court's subject matter jurisdiction because there is no diversity jurisdiction between the Fund and SocGen (both of which are aliens). Because the Writs Act does not confer jurisdiction to adjudicate the Fund's disputes, *Syngenta Crop Protection, Inc.*, 537 U.S. at 33, the Court lacks subject matter jurisdiction to grant the requested relief.

Even if (i) the Court had subject matter jurisdiction, (ii) a preliminary mandatory injunction against a non-party was permissible, and (iii) the requested relief would not needlessly put this Court into conflict with the Order of the Cayman Court, the relief sought is inappropriate because the situs of the contractual obligation is Grand Cayman. (SocGen Confirmation, Polovoy Decl. Ex. C.) The internal SocGen transfers that took place to implement the freeze of the Deposit had no impact on the situs of the SocGen's contractual obligation. *See Braka v.*

*Bancomer, S.N.C.*, 762 F.2d 222, 224-25 (2d Cir. 1985) ("The fact that plaintiffs' deposits were occasionally accepted and transmitted to Mexico by Bancomer's New York agency does not alter the situs of Bancomer's obligation. It is clear that the accomplishment of interbank transfers, which was the extent of the New York agency's participation, does not change the contractually mandated situs . . . .").

The requested relief is also unwarranted because nothing in SocGen's conduct poses any threat to the effectuation of the Court's April 29 Order directing the Fund to deposit assets *in its control* with this Court. The Writs Act should not be employed (even against a party) where, as here, the court would, absent the requested writ, retain jurisdiction and its ability to make a proper order. *PATCO*, 438 F.2d at 81. RMCI's appeal in the Cayman Court will determine whether the Deposit is a debt within the control of the Liquidators (as the lower court has ruled) or a debt within the control of the representatives of the Fund who commenced the action in this Court, and that dispute must be resolved before the Deposit can be brought within this Court's jurisdiction.

The relief sought by the Fund is also contrary to the equitable principles that underpin this Court's authority under the Writs Act. The Fund or its agent are prosecuting two separate actions seeking identical relief to the demand made here in a third action. Apparently unsatisfied with the direction of the Cayman action, the Fund asks this Court to seek the relief that is not forthcoming elsewhere. Indeed, even as the Court considers this petition, RMCI and the Fund continue to pursue both of the other litigations. These are not circumstances in which it is appropriate for the Court to exercise its equitable powers under the Writs Act. We are aware of no case, and the Fund cites none, where a court issues a writ on petition from a party that has created the very litigation that the writ is intended to forestall.

Although it is within the Court's discretion to issue writs against third parties, the writ may not impose an unreasonable burden on the third party. *N.Y. Tel. Co.*, 434 U.S. at 172. Third-party writs are issued where the third party's cooperation is essential because the third party is "in a position to frustrate the implementation" of a court order. *See, e.g., Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413 (2d Cir. 2002) (citation and quotation marks omitted). Indeed, the Second Circuit has acknowledged that its precedent shows a "decided tendency" to restrain the use of Writs Act powers against innocent third parties. *Ass'n for Retarded Citizens of Conn., Inc.*, 30 F.3d at 372-73. Here, of course, non-party SocGen is not alleged to have "frustrate[d] the implementation" of any court order.

Issuance of an injunction against SocGen directing payment of the Deposit in to the Court's Registry would impose substantial and unnecessary burden on SocGen. A third order on the Deposit would expose SocGen to the very real threat of double liability resulting from the conflict with the existing Cayman Court order. The Cayman Court has just reiterated its order instructing SocGen to repay the Deposit to the Liquidators of the Fund (Polovoy Decl. ¶ 16), and SocGen should not be subjected to the burden of directly conflicting orders. The Deposit that the Fund seeks to have paid into the Court's Registry has already been interpleaded in the first-filed Cayman Action, and the Cayman Court has ruled. (Tipton Aff. Ex. 9; Petition Ex. B; Polovoy Decl. ¶ 16.)

In itself, exposure of this nature would constitute an unreasonable burden on an innocent third party. Absent cancellation of the debt created by the Deposit in the Cayman Islands or a bond posted by the Fund to indemnify SocGen for its exposure in the Cayman Action, the burden posed by a prospective writ of injunction is immense and inherently

unreasonable. Until the dispute over the Deposit can be resolved by the Cayman Court, this Court should not order the Deposit paid into its Registry.[2]

---

[2] A petition for a writ of injunction, if at all appropriate, is best directed at the Liquidators. The Fund's petition focuses on a threat posed by the Liquidators to the effectiveness of this Court's April 29 Order, not any actions taken by SocGen, whom the Fund acknowledges is merely a stakeholder. (Pet. ¶¶ 10-13, 42-45.) SocGen is not the appropriate target for the Fund's petition.

## CONCLUSION

For the foregoing reasons, the Fund's petition for a writ of injunction against Non-Party Société Générale under the All Writs Act should be denied.[3]

Dated:   New York, New York
         June 1, 2010

                                        Respectfully submitted,

                                        SHEARMAN & STERLING LLP

                                        By: _____
                                             Brian H. Polovoy

                                        599 Lexington Avenue
                                        New York, NY 10022-6069
                                        Telephone: (212) 848-4000
                                        Facsimile: (212) 848-7179
                                        bpolovoy@shearman.com

                                        *Attorneys for Non-Party Société Générale*

---

[3] The order to show cause does not require SocGen to respond in writing to the Fund's petition, and SocGen has not been served with any process. Accordingly, this memorandum does not purport to respond to all of the allegations in the Fund's Petition and moving papers, but instead addresses why a writ of injunction against SocGen under the Writs Act is inappropriate at this time. While we do not address every allegation, several of which are misleading or inaccurate, this should not be construed as an admission that the allegations are true (or a waiver of any arguments or defenses); instead, it reflects that the Order gave SocGen two business days to show cause why the requested relief should not be granted, and we do not see the relevance of many of the allegations to the requested relief. If the requested relief is not summarily denied, SocGen respectfully requests the opportunity to have a reasonable period of time to supplement this memorandum with further submissions.